# Supreme Court of Florida

_____

No. SC17-583
_____

## IN RE:  STANDARD CRIMINAL JURY INSTRUCTIONS
## IN CAPITAL CASES.

[May 24, 2018]

PER CURIAM.

Previously in this case, the Court authorized for publication and use on an interim basis, on its own motion, amended existing instructions 7.11 (Preliminary Instructions in Penalty Proceedings—Capital Cases) and 7.12 (Dialogue for Polling the Jury (Death Penalty Case)), and adopted new instructions 3.12(e) (Jury Verdict Form—Death Penalty) and 7.11(a) (Final Instructions in Penalty Proceedings—Capital Cases).  *In re Std. Crim. Jury Instrs. in Capital Cases*, 214 So. 3d 1236 (Fla. 2017).[1]

The need for the Court to authorize for publication and use revised and new capital case jury instructions arose from the decision in *Hurst v. Florida*, 136 S. Ct.

---

1.  We have jurisdiction.  *See* art. V, § 2(a), Fla. Const.

616 (2016), wherein the United States Supreme Court held that a portion of Florida's death penalty sentencing scheme was unconstitutional because a jury was not required to find the facts necessary to impose a sentence of death. *See id.* at 619. Following remand from the Supreme Court, we held

> that in addition to unanimously finding the *existence* of any aggravating factor, the jury must also unanimously find that the aggravating factors are *sufficient* for the imposition of death and unanimously find that the aggravating factors *outweigh* the mitigation before a sentence of death may be considered by the judge.

*Hurst v. State*, 202 So. 3d 40, 54 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017). We further held that a unanimous jury recommendation for death is required before a trial court may impose a sentence of death. *Id.* The changes to the standard criminal jury instructions were also warranted in light of chapter 2017-1, Laws of Florida, amending section 921.141, Florida Statutes (2016), which requires a jury to unanimously determine that a defendant should be sentenced to death.

Because the Court authorized the interim instructions on its own motion, we allowed sixty days in which the Supreme Court Committee on Standard Jury Instructions in Criminal Cases (Committee) and other interested persons could file comments. *In re Std. Crim. Jury Instrs. in Capital Cases*, 214 So. 3d at 1236-37, 1237 n.2. The Court received numerous comments and a response from the Committee proposing new amendments to the instructions and a response to the comments filed with the Court. Based upon the comments, the Committee's

- 2 -

response and proposals, and having heard oral argument in this case, we now further amend the instructions. The more significant amendments to the interim instructions are discussed below.

First, instruction 3.12(e) (Jury Verdict Form—Death Penalty) is amended under Section C to change the title from "Statutory Mitigating Circumstances" to "Mitigating Circumstances." In addition, as amended, the verdict form under Section C no longer requires jurors to list the mitigating circumstances found or to provide the jury vote as to the existence of mitigating circumstances.

Next, with regard to instruction 7.11 (Preliminary Instructions in Penalty Proceedings—Capital Cases), we amend the interim instruction by renumbering it from 7.11 to 7.10; under "Give this instruction in all cases," removing from the provision "(2) whether one or more aggravating factors exist beyond a reasonable doubt" because it is duplicative of "(1) whether each aggravating factor is proven beyond a reasonable doubt"; under "Aggravating Factors," deleting the word "recommending" and replacing it with the phrase "a verdict of"; and adding "unanimously" to the sentence "In order to consider the death penalty as a possible penalty, you must determine that at least one aggravating factor has been proven beyond a reasonable doubt."

We also amend instruction 7.11(a) (Final Instructions in Penalty Proceedings—Capital Cases) by renumbering it to 7.11. Within that instruction,

we add the following sentence pertaining to the weighing process: "The next step in the process is for each of you to determine whether the aggravating factor[s] that you have unanimously found to exist outweigh[s] the mitigating circumstance[s] that you have individually found to exist." In addition, we delete the portion of instruction 7.11 that directs the jury to "weigh all of the following."

Accordingly, we authorize the capital case jury instructions for publication and use as set forth in the appendix to this opinion.[2] New language is indicated by underlining; deleted language is indicated by struck-through type. In authorizing the publication and use of these instructions, we express no opinion on their correctness and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of these instructions. The instructions as set forth in the appendix shall become effective immediately upon the release of this opinion.

We also take this opportunity to thank the Supreme Court Committee on Standard Jury Instructions in Criminal Cases, the Florida Supreme Court's

_____

2. The amendments as reflected in the appendix are to the Criminal Jury Instructions as they appear on the Court's website at www.floridasupremecourt.org /jury_instructions/instructions.shtml. We recognize that there may be minor discrepancies between the instructions as they appear on the website and the published versions of the instructions. Any discrepancies as to instructions authorized for publication and use after October 25, 2007, should be resolved by reference to the published opinion of this Court authorizing the instruction.

Criminal Steering Committee, the faculty of the Handling Capital Cases course, the Honorable James C. Hankinson, the Honorable James M. Colaw, the Florida Prosecuting Attorneys Association, the Florida Public Defender Association, the Florida Association of Criminal Defense Lawyers, the Florida Center for Capital Representation at Florida International University College of Law, and all other commenters, for their thoughtful consideration, recommendations, and insight in addressing the complicated issues presented by implementing the death penalty. This assistance has been invaluable to the Court's modifications to the interim instructions.

It is so ordered.

LEWIS, CANADY, POLSTON, and LAWSON, JJ., concur.
PARIENTE, J., concurs in result with an opinion, in which LABARGA, C.J., and QUINCE, J., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

I concur with each part of the per curiam opinion except its decision to "no longer require[] jurors to list the mitigating circumstances found or to provide the jury vote as to the existence of mitigating circumstances" in instruction 3.12(e), Section C. Per curiam op. at 3. Of course, the per curiam does not preclude the use of special verdict forms that include all mitigating circumstances proposed with a place for the jury vote. *See* per curiam op. at 4 (stating that "all interested

- 5 -

parties" may "request[] additional or alternative instructions"). Therefore, I would strongly urge the trial courts, at the request of defendants, to utilize a verdict form that includes places for the jury's findings on mitigating circumstances, especially in light of *Hurst*.[3]

By including mitigating circumstances on the standard verdict form, this Court would enhance uniformity for jury findings as to mitigating circumstances. Nevertheless, when requested by the defendant, trial courts should follow the standard verdict form previously promulgated by this Court on an interim basis, which includes a list of mitigating circumstances proposed by the defendant and a place for the jury to indicate its vote for each mitigator. *In re Std. Crim. Jury Instrs. in Capital Cases*, 214 So. 3d 1236, 1239-40 (Fla. 2017). For reference, I include in this opinion the relevant language from that form.

### Federal Verdict Forms

Based on oral argument and the supplemental authority filed in this case, it is clear that at least some federal courts use special verdict forms that request the jury in capital cases to list the mitigating circumstances it found and to indicate the jury's vote as to whether each mitigating circumstance was proven.[4] Reviewing

---

3. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

4. *See* Notice of Supp. Auth. (Fla. Mar. 8, 2018)*; see also* Standard Jury Instructions (8th Cir.) at 12.22,

- 6 -

the supplemental authority in this case—special verdict forms from federal capital prosecutions in Florida, one of which may be accessed here—demonstrates how these findings may be useful.  Thus, requiring the jury to state its findings for each mitigating circumstance is consistent with the verdict forms employed by some federal courts.

### Florida Law in Light of *Hurst*

As the per curiam opinion explains, Florida's capital sentencing scheme has substantially changed in light of the United States Supreme Court's opinion in *Hurst v. Florida*, 136 S. Ct. 616 (2016), and our opinion on remand in *Hurst*. *Hurst* made clear that each of the jury's findings, including mitigation, are constitutionally significant under the Sixth Amendment to the United States Constitution and article I, section 22, of the Florida Constitution.  *See Hurst*, 202 So. 3d at 44; *see also* per curiam op. at 2.  Likewise, I have explained several times since *Hurst* that the penalty phase jury's findings on mitigation are critical to the constitutional imposition of the death penalty, and this Court cannot speculate as to a jury's findings of mitigation when reviewing a death sentence.  *See, e.g.*, *Hannon v. State*, 228 So. 3d 505, 514-19 (Fla.) (Pariente, J., dissenting), *cert. denied*, 138 S. Ct. 441 (2017); *Kaczmar v. State*, 228 So. 3d 1, 16-17 (Fla. 2017) (Pariente, J.,

---

http://www.juryinstructions.ca8.uscourts.gov/sec12.pdf; *id.* at 12.10 (jury instructions stating that the special verdict form asks but does not require the jury "to identify any mitigating factors that any one [juror] finds has been proved").

concurring in part and dissenting in part) (joined by Justice Quince), *petition for cert. filed*, No. 17-8148 (U.S. Mar. 14, 2018); *see also Hurst*, 202 So. 3d at 44. As I did even before *Hurst*, I now urge the Court, especially in light of *Hurst*, to fully correct our standard capital verdict form to ensure the constitutional imposition of death sentences in this State.[5]

As I have explained, including the jury's findings of aggravating factors *and* mitigating circumstances "would both facilitate our proportionality review and satisfy the constitutional guarantee of trial by jury." *Lebron v. State*, 982 So. 2d 649, 671 (Fla. 2008) (Pariente, J., concurring); *see Coday v. State*, 946 So. 2d 988, 1023-25 (Fla. 2006) (Pariente, J., concurring in part and dissenting in part). Likewise, specially concurring in *Aguirre-Jarquin v. State*, 9 So. 3d 593 (Fla. 2009), joined by now-Chief Justice Labarga, I explained that some of the most experienced trial judges in our State use special verdict forms to avoid "the constitutional concerns with the inability to receive explicit jury findings," *id.* at

---

5. *See, e.g.*, *Aguirre-Jarquin v. State*, 9 So. 3d 593, 611-13 (Fla. 2009) (Pariente, J., specially concurring); *In re Std. Jury Instrs. in Crim. Cases—Report No. 2005-2*, 22 So. 3d 17, 25-27 (Fla. 2009) (Pariente, J., specially concurring); *Lebron v. State*, 982 So. 2d 649, 671 (Fla. 2008) (Pariente, J., concurring); *Franklin v. State*, 965 So. 2d 79, 104 (Fla. 2007) (Pariente, J., specially concurring); *Coday v. State*, 946 So. 2d 988, 1023-25 (Fla. 2006) (Pariente, J., concurring in part and dissenting in part); *Huggins v. State*, 889 So. 2d 743, 777 (Fla. 2004) (Pariente, J., dissenting).

611 (Pariente, J., specially concurring), and that "special verdict forms would assist in this Court's review of death sentences." *Id.* at 613.

Further, I explained in my specially concurring opinion in *In re Standard Jury Instructions in Criminal Cases—Report No. 2005-2*, 22 So. 3d 17 (Fla. 2009), joined by now-Chief Justice Labarga and former Justice Perry:

> I also believe that this Court has missed an opportunity to further enhance the process of imposition of the death penalty by requiring the use of special verdict forms in the penalty phase so that the jury could have had the opportunity to record its findings on aggravators and mitigators—the essential ingredients in the ultimate decision of whether to impose the death penalty. As the Committee explained in its initial report, "the trial judge [presently] does not know how the jury considered the various aggravating and mitigating circumstances," and *it would be "most helpful to the trial judge [in preparing the sentencing order] to know how the jury viewed the evidence presented in the penalty phase," for this would "provide valuable assistance in deciding the weight to be given to each circumstance."* (Emphasis added). . . .
>
> . . . .
>
> I continue to believe that this Court has the authority to require special interrogatories and since the Court does not believe that it has that authority, I urge, as did Justice Cantero before me, that there be changes to the death penalty statute to allow for the use of special verdict forms.

*Id.* at 24-27 (Pariente, J., specially concurring).

Thus, even though the majority of this Court does not adopt a standard verdict form requiring trial courts to list mitigating circumstances and asking the jury to indicate its findings as to mitigating circumstances, it also does not prevent these findings. Accordingly, when requested by the defendant, I urge the trial

- 9 -

courts to use verdict forms that include those findings. *See* majority op. at 3. In the interest of uniformity, I urge trial courts to use the following language, which this Court promulgated after *Hurst*:[6]

**Mitigating Circumstances:**

We the jury find that (mitigating circumstance) was established by the greater weight of the evidence.

YES _____

NO _____

If you answered YES above, please provide the jury vote as to the existence of (mitigating circumstance).

VOTE OF ____ TO ____.

*Repeat for each mitigating circumstance proposed by the defendant.*

*See In re Std. Crim. Jury Instrs. in Capital Cases*, 214 So. 3d at 1239-40.

## CONCLUSION

For all of these reasons, I would include mitigating circumstances in the standard verdict form for the penalty phase of capital cases, including the jury's vote as to each mitigating circumstance. Nevertheless, because the majority deletes these findings in the instructions approved today, I encourage defense

---

6. The verdict form promulgated by this Court in our prior opinion separated statutory and nonstatutory mitigating circumstances. *See In re Std. Crim. Jury Instrs. in Capital Cases*, 214 So. 3d at 1239-40. After considering the arguments in this case, I agree with the per curiam that this is no longer necessary and, therefore, have slightly revised the prior verdict form. Per Curiam op. at 3.

counsel to request and the trial courts to approve, respectively, the inclusion of these findings on the verdict form. *See* per curiam op. at 4 (stating that "all interested parties" may "request[] additional or alternative instructions").

LABARGA, C.J., and QUINCE, J., concur.

Original Proceeding – Supreme Court Committee on Standard Jury Instructions in Criminal Cases

Judge Debra Johnes Riva, Twelfth Judicial Circuit, Sarasota, Florida, and Judge James C. Hankinson on behalf of Handling Capital Cases Faculty, Tallahassee, Florida; Howard L. "Rex" Dimmig, II, Public Defender, and Peter Mills, Assistant Public Defender, Chair, Florida Public Defender Association Death Penalty Steering Committee, Tenth Judicial Circuit, Bartow, Florida; Karen M. Gottlieb on behalf of Florida Center for Capital Representation at FIU College of Law, Miami, Florida, and Billy H. Nolas, Chief, Capital Habeas Unit, Federal Public Defender, Northern District, Tallahassee, Florida, Sonya Rudenstine, Gainesville, Florida, Luke Newman, Tallahassee, Florida, and William R. Ponall of Ponall Law on behalf of Florida Association of Criminal Defense Lawyers, Maitland, Florida; Robert R. Berry, Tallahassee, Florida; Penny H. Brill, Assistant State Attorney, Eleventh Judicial Circuit, Miami, Florida, and Arthur I. Jacobs of Jacobs Scholz & Associates, LLC on behalf of Florida Prosecuting Attorneys Association, Fernandina Beach, Florida; Judge F. Rand Wallis, Chair, and Judge James Colaw, Supreme Court Committee on Standard Jury Instructions in Criminal Cases, Daytona Beach, Florida; and Bart Schneider, Staff Liaison, Office of the State Courts Administrator, Tallahassee, Florida,

    Responding with comments

- 11 -

# APPENDIX

## 3.12(e)  JURY VERDICT FORM—DEATH PENALTY

We the jury find as follows as to (Defendant) in this case:

### A.  Aggravating Factors as to Count ___:

We the jury unanimously find that the State has established beyond a reasonable doubt the existence of (aggravating factor).
YES _____
NO _____

*Repeat this step for each statutory aggravating factor submitted to the jury.*

**If you answer YES to at least one of the aggravating factors listed, please proceed to Section B.  If you answered NO to every aggravating factor listed, do not proceed to Section B;** (Defendant) **is not eligible for the death sentence and will be sentenced to life in prison without the possibility of parole.**

### B.  Sufficiency of the Aggravating Factors as to Count ___:

Reviewing the aggravating factors that we unanimously found to be established beyond a reasonable doubt (Section A), we the jury unanimously find the aggravating factors are sufficient to warrant a possible sentence of death.
YES _____
NO _____

**If you answer YES to Section B, please proceed to Section C.  If you answer NO to Section B, do not proceed to Section C;** (Defendant) **will be sentenced to life in prison without the possibility of parole.**

### C.  ~~Statutory~~ Mitigating Circumstances:

~~We the jury~~One or more individual jurors find that ~~(statutory~~one or more mitigating circumstances~~)~~ was established by the greater weight of the evidence.
YES _____
NO _____

- 12 -

If you answered YES above, please provide the jury vote as to the existence of (statutory mitigating circumstance).
VOTE OF _____ TO _____.

*Repeat for each statutory mitigating circumstance.*

**Please proceed to Section D, regardless of your findings in Section C.**

### D. Eligibility for the Death Penalty for Count ___.

We the jury unanimously find that the aggravating factors that were proven beyond a reasonable doubt (Section A) outweigh the mitigating circumstances established (Section C above) as to Count ___.

YES _____
NO _____

**If you answered YES to Section D, please proceed to Section E. If you answered NO to Section D, do not proceed;** (Defendant) **will be sentenced to life in prison without the possibility of parole.**

### E. Jury Verdict as to Death Penalty

Having unanimously found that at least one aggravating factor has been established beyond a reasonable doubt (Section A), that the aggravating [factor] [factors] [is] [are] sufficient to warrant a sentence of death (Section B), and the aggravating [factor] [factors] outweigh the mitigating circumstances (Section D), we the jury unanimously find that (Defendant) should be sentenced to death.

YES _____
NO _____

If NO, our vote to impose a sentence of life is _____ to _____.

**If your vote to impose death is less than unanimous, the trial court shall impose a sentence of life without the possibility of parole.**

Dated this _____ day of _____, 20__, in _____ County, Florida.

_____
(Signature of foreperson) / Juror identification number

**Comment**

This instruction was adopted in 2017 [214 So. 3d 1236] and amended in 2018.

### 7.1~~1~~0 PRELIMINARY INSTRUCTIONS IN PENALTY PROCEEDINGS — CAPITAL CASES
§ 921.141, Fla. Stat.

*The instruction is designed for first degree murders committed after May 24, 1994, when the Legislature omitted the possibility of parole for anyone convicted of First Degree Murder.  For first degree murders committed before May 25, 1994, this instruction will have to be modified.*

*This instruction is to be given immediately before the opening statements in the penalty phase of a death penalty case.*

*Give 1a at the beginning of penalty proceedings before a jury that did not try the issue of guilt.  ~~Give bracketed language if the case has been remanded for a new penalty proceeding.  See Hitchcock v. State, 673 So. 2d 859 (Fla. 1996).~~ In addition, give the jury other appropriate general instructions.*

> **1. a.** **Members of the jury, the defendant has been found guilty of ____ count[s] of Murder in the First Degree in a previous proceeding.  The only issue before you is to determine the appropriate sentence. The punishment for this crime is either life imprisonment without the possibility of parole or death.**

*Give 1b at the beginning of penalty proceedings before the jury that found the defendant guilty.*

> **b.** **Members of the jury, you have found the defendant guilty of _____ count[s] of Murder in the First Degree. The punishment for this crime is either life imprisonment without the possibility of parole or death.**

- 14 -

*For murders committed before May 25, 1994, the following paragraph should be modified to comply with the statute in effect at the time the crime was committed. If the jury inquires whether the defendant will receive credit for time served against a sentence of life without possibility of parole for 25 years, the court should instruct that the defendant will receive credit for all time served but that there is no guarantee the defendant will be granted parole either upon serving 25 years or subsequently. See Green v. State, 907 So. 2d 489, 496 (Fla. 2005).*

**2. The punishment for this crime is either life imprisonment without the possibility of parole or death.**

*Give this instruction in all cases.*

**The attorneys will now have an opportunity, if they wish, to make an opening statement. The opening statement gives the attorneys a chance to tell you what evidence they believe will be presented during the penalty phase of this trial. What the lawyers say during opening statements is not evidence, and you are not to consider it as such. After the attorneys have had the opportunity to present their opening statements, the State and the defendant may present evidence relative to the nature of the crime and the defendant's character, background, or life. You are instructed that this evidence [, along with the evidence that you heard during the guilt phase of this trial,] is presented in order for you to determine, as you will be instructed, (1) whether each aggravating factor is proven beyond a reasonable doubt; (2) whether one or more aggravating factors exist beyond a reasonable doubt; (3) whether the aggravating factors found to exist beyond a reasonable doubt are sufficient to justify the imposition of the death penalty; (43) whether mitigating circumstances are proven by the greater weight of the evidence; (54) whether the aggravating factors outweigh the mitigating circumstances; and (65) whether the defendant should be sentenced to life imprisonment without the possibility of parole or death. At the conclusion of the evidence and after argument of counsel, you will be instructed on the law that will guide your deliberations.**

*Aggravating Factors:*

**An aggravating factor is a standard to guide the jury in making the choice between recommendinga verdict of life imprisonment without the possibility of parole or death. It is a statutorily enumerated circumstance that increases the gravity of a crime or the harm to a victim.**

**You must unanimously agree that each aggravating factor was proven beyond a reasonable doubt before it may be considered by you in arriving at**

your final verdict.  In order to consider the death penalty as a possible penalty, you must unanimously determine that at least one aggravating factor has been proven beyond a reasonable doubt.

The State has the burden to prove each aggravating factor beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt, a speculative, imaginary, or forced doubt. Such a doubt must not influence you to disregard an aggravating factor if you have an abiding conviction that it exists. On the other hand, if, after carefully considering, comparing, and weighing all the evidence, you do not have an abiding conviction that the aggravating factor exists, or if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the aggravating factor has not been proved beyond ~~every~~a reasonable doubt and you must not consider it in providing your verdict on the appropriate sentence to the court.

A reasonable doubt as to the existence of an aggravating factor may arise from the evidence, conflicts in the evidence, or the lack of evidence. If you have a reasonable doubt as to the existence of an aggravating factor, you must find that it does not exist.  However, if you have no reasonable doubt, you should find that the aggravating factor does exist.

Before moving on to the mitigating circumstances, you must determine that the aggravating factor[s] [is] [are] sufficient to impose a sentence of death.  If you do not unanimously agree that the aggravating factor[s] [is] [are] sufficient to impose death, do not move on to consider the mitigating circumstances.

*Mitigating Circumstances:*
Should you find sufficient aggravating factors do exist to justify ~~recommending~~ the imposition of the death penalty, it will then be your duty to determine whether the aggravating factors that you unanimously find to have been proven beyond a reasonable doubt outweigh the mitigating circumstances that you find to have been established.  Unlike aggravating factors, you do not need to unanimously agree that a mitigating circumstance has been established. Rather, whether a mitigating circumstance has been established is an individual judgment by each juror.

A mitigating circumstance is not limited to the facts surrounding the crime.  It can be anything ~~in the life of the defendant~~ which might indicate that the death penalty is not appropriate for the defendant.  In other words, a

- 16 -

**mitigating circumstance may include any aspect of the defendant's character, background, or life or any circumstance of the offense that reasonably may indicate that the death penalty is not an appropriate sentence in this case.**

**A mitigating circumstance need not be proven beyond a reasonable doubt by the defendant. A mitigating circumstance need only be proven by the greater weight of the evidence, which means evidence that more likely than not tends to prove the existence of a mitigating circumstance. If you determine by the greater weight of the evidence that a mitigating circumstance exists, you may consider it established and give that evidence such weight as you determine it should receive in reaching your conclusion as to the sentence to be imposed.**

## Comments

The court may instruct jurors regarding victim impact evidence or other sections of the final instructions (#7.11) as part of the preliminary instruction.

This instruction was adopted in 1981 and amended in 1985 [477 So. 2d 985], 1989 [543 So. 2d 1205], 1991 [579 So. 2d 75], 1992 [603 So. 2d 1175], 1994 [639 So. 2d 602], 1995 [665 So. 2d 212], 1996 [678 So. 2d 1224], 1997 [690 So. 2d 1263], 1998 [723 So. 2d 123], 2009 [22 So. 3d 17], 2014 [146 So. 3d 1110], and 2017 [214 So. 3d 1236], and 2018.

## 7.11(a) FINAL INSTRUCTIONS IN PENALTY PROCEEDINGS — CAPITAL CASES
§ 921.141, Fla. Stat.

*This instruction should be given after the closing arguments in the penalty phase of a death penalty trial. The instruction is designed for first degree murders committed after May 24, 1994, when the Legislature omitted the possibility of parole for anyone convicted of First Degree Murder. For first degree murders committed before May 25, 1994, this instruction will have to be modified.*

**Members of the jury, you have heard all the evidence and the argument of counsel. It is now your duty to make a decision as to the appropriate sentence that should be imposed upon the defendant for the crime of First Degree Murder. There are two possible punishments: (1) life imprisonment without the possibility of parole, or (2) death.**

**In making your decision, you must first unanimously determine whether the aggravating factor[s] alleged by the State [has] [have] been proven beyond a reasonable doubt. An aggravating factor is a circumstance that increases the gravity of a crime or the harm to a victim. No facts other than proven aggravating factors may be considered in support of a death sentence.**

*Aggravating factors. § 921.141(6), Fla. Stat.*
**The aggravating factor[s] alleged by the State [is] [are]:**

*Give only those aggravating factors noticed by the State which are supported by the evidence.*
**1.** (Defendant) **was previously convicted of a felony and [under sentence of imprisonment] [on community control] [on felony probation].**

**2.** (Defendant) **was previously convicted of [another capital felony] [a felony involving the [use] [threat] of violence to another person].**

> *Give 2a or 2b as applicable.*
> **a.** **The crime of** (previous crime) **is a capital felony.**
>
> **b.** **The crime of** (previous crime) **is a felony involving the [use] [threat] of violence to another person.**

**3.** (Defendant) **knowingly created a great risk of death to many persons.**

**4.** **The First Degree Murder was committed while** (defendant) **was [engaged] [an accomplice] in [the commission of] [an attempt to commit] [flight after committing or attempting to commit]**

**any**

*Check § 921.141(6)(d), Fla. Stat., for any change in list of offenses.*
**[robbery].**
**[sexual battery].**
**[aggravated child abuse].**
**[abuse of an elderly person or disabled adult resulting in great bodily harm, permanent disability, or permanent disfigurement].**

[arson].
[burglary].
[kidnapping].
[aircraft piracy].
[unlawful throwing, placing or discharging of a destructive device or bomb].

*Check § 921.141(6)(d), Fla. Stat., for any change in list of offenses.*

**5.     The First Degree Murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.**

**6.     The First Degree Murder was committed for financial gain.**

**7.     The First Degree Murder was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.**

**8.     The First Degree Murder was especially heinous, atrocious or cruel.**

> **"Heinous" means extremely wicked or shockingly evil.**

> **"Atrocious" means outrageously wicked and vile.**

> **"Cruel" means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others.**

> **The kind of crime intended to be included as especially heinous, atrocious, or cruel is one accompanied by additional acts that show that the crime was conscienceless or pitiless and was unnecessarily torturous to** (decedent).

**9.     The First Degree Murder was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification.**

> **"Cold" means the murder was the product of calm and cool reflection.**

**"Calculated" means having a careful plan or prearranged design to commit murder.**

**A killing is "premeditated" if it occurs after the defendant consciously decides to kill. The decision must be present in the mind at the time of the killing. The law does not fix the exact period of time that must pass between the formation of the premeditated intent to kill and the killing. The period of time must be long enough to allow reflection by the defendant. The premeditated intent to kill must be formed before the killing.**

**However, in order for this aggravating factor to apply, a heightened level of premeditation, demonstrated by a substantial period of reflection, is required.**

**A "pretense of moral or legal justification" is any claim of justification or excuse that, though insufficient to reduce the degree of murder, nevertheless rebuts the otherwise cold, calculated, or premeditated nature of the murder.**

**10.** (Decedent) **was a law enforcement officer engaged in the performance of [his] [her] official duties.**

**11.** (Decedent) **was an elected or appointed public official engaged in the performance of [his] [her] official duties, if the motive for the First Degree Murder was related, in whole or in part, to** (decedent's) **official capacity.**

**12.** (Decedent) **was a person less than 12 years of age.**

**13.** (Decedent) **was particularly vulnerable due to advanced age or disability, or because** (defendant) **stood in a position of familial or custodial authority over** (decedent)**.**

*With the following aggravating factor, definitions as appropriate from § 874.03, Fla. Stat., must be given.*

**14.** **The First Degree Murder was committed by a criminal street gang member.**

**15.** The First Degree Murder was committed by a person designated as a sexual predator or a person previously designated as a sexual predator who had the sexual predator designation removed.

**16.** The First Degree Murder was committed by a person subject to

[a domestic violence injunction issued by a Florida judge],
[a [repeat] [sexual] [dating] violence injunction issued by a Florida judge],
[a protection order issued from [another state] [the District of Columbia] [an Indian tribe] [a commonwealth, territory, or possession of the United States]],

and

the victim of the First Degree Murder was [the person] [a [spouse] [child] [sibling] [parent] of the person] who obtained the [injunction] [protective order].

*Merging aggravating factors. Give the following paragraph if applicable. For example, the aggravating circumstances that 1) the murder was committed during the course of a robbery and 2) the murder was committed for financial gain, relate to the same aspect of the offense and may be considered as only a single aggravating circumstance. Castro v. State, 597 So. 2d 259 (Fla. 1992).*
**Pursuant to Florida law, the aggravating factors of** *(insert aggravating factor)* **and** *(insert aggravating factor)* **are considered to merge because they are considered to be a single aspect of the offense. If you unanimously determine that the aggravating factors of** *(insert aggravating factor)* **and** *(insert aggravating factor)* **have both been proven beyond a reasonable doubt, your findings should indicate that both aggravating factors exist, but you must consider them as only one aggravating factor.**

*Victim-impact evidence. Give if applicable. Also, give at the time victim impact evidence is admitted, if requested.*
**You have heard evidence about the impact of this murder on the [family] [friends] [community] of** (decedent)**. This evidence was presented to show the victim's uniqueness as an individual and the resultant loss by** (decedent's) **death. However, you may not consider this evidence as an aggravating factor.**

*Give in all cases.*

As explained before the presentation of evidence, the State has the burden to prove an aggravating factor beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt, a speculative, imaginary, or forced doubt. Such a doubt must not influence you to disregard an aggravating factor if you have an abiding conviction that it exists. On the other hand, if, after carefully considering, comparing, and weighing all the evidence, you do not have an abiding conviction that the aggravating factor exists, or if, having a conviction, it is one which is not stable but one which waivers and vacillates, then the aggravating factor has not been proved beyond ~~every~~a reasonable doubt and you must not consider it in providing a verdict.

A reasonable doubt as to the existence of an aggravating factor may arise from the evidence, a conflict in the evidence, or the lack of evidence. If you have a reasonable doubt as to the existence of an aggravating factor, you must find that it does not exist. However, if you have no reasonable doubt, you should find the aggravating factor does exist.

A finding that an aggravating factor exists must be unanimous, that is, all of you must agree that <u>[the]</u> [each] presented aggravating factor exists. You will be provided a form to make this finding [as to each alleged aggravating factor] and you should indicate whether or not you find [the] [each] aggravating factor has been proven beyond a reasonable doubt.

If you do not unanimously find that at least one aggravating factor was proven by the State<u> beyond a reasonable doubt</u>, then the defendant is not eligible for the death penalty, and your verdict must be for a sentence of life imprisonment without the possibility for parole.  At such point, your deliberations are complete.

If, however, you unanimously find that [one or more] [the] aggravating factor[s] [has] [have] been proven beyond a reasonable doubt, then the defendant is eligible for the death penalty, and you must make additional findings to determine whether the appropriate sentence to be imposed is life imprisonment without the possibility of parole or death.

*Mitigating circumstances.  § 921.141(7), Fla. Stat.*
If you do unanimously find the existence of at least one aggravating factor and that the aggravating factor[~~(s)~~] [is] [are] sufficient to impose a

- 22 -

sentence of death, the next step in the process is for you to determine whether any mitigating circumstances exist. A mitigating circumstance <u>is anything that supports a sentence of life imprisonment without the possibility of parole, and</u> can be anything ~~in the life of the defendant~~ which might indicate that the death penalty is not appropriate. It is not limited to the facts surrounding the crime. A mitigating circumstance may include any aspect of the defendant's character, background, or life or any circumstance of the offense that may reasonably indicate that the death penalty is not an appropriate sentence in this case.

<u>It is the defendant's burden to prove that one or more mitigating circumstances exist. Mitigating circumstances do not need to be proven beyond a reasonable doubt.  Instead, the defendant need only establish a mitigating circumstance by the greater weight of the evidence, which means evidence that more likely than not tends to establish the existence of a mitigating circumstance. If you determine by the greater weight of the evidence that a mitigating circumstance exists, you must consider it established and give that evidence such weight as you determine it should receive in reaching your verdict about the appropriate sentence to be imposed. Any juror persuaded as to the existence of a mitigating circumstance must consider it in this case.</u>

Among the mitigating circumstances you may consider are:
*Give only those mitigating circumstances for which evidence has been presented.*

1.      (Defendant) **has no significant history of prior criminal activity.**

*If the defendant offers evidence on this circumstance and the State, in rebuttal, offers evidence of other crimes, also give the following:*

**Conviction of** (previous crime) **is not an aggravating factor to be considered in determining the penalty to be imposed on the defendant, but a conviction of that crime may be considered by the jury in determining whether the defendant has a significant history of prior criminal activity.**

2.      **The First Degree Murder was committed while** (defendant) **was under the influence of extreme mental or emotional disturbance.**

3.      (Decedent) **was a participant in** (defendant's) **conduct or consented to the act.**

**4.**      (Defendant) **was an accomplice in the First Degree Murder committed by another person and [his] [her] participation was relatively minor.**

**5.**      (Defendant) **acted under extreme duress or under the substantial domination of another person.**

**6.**      **The capacity of** (defendant) **to appreciate the criminality of [his] [her] conduct or to conform [his] [her] conduct to the requirements of law was substantially impaired.**

**7.**      (Defendant's) **age at the time of the crime.**

*The judge should also instruct on any additional mitigating circumstances as requested.*

**8.**      **The existence of any other factors in** (defendant's) **character, background, or life or the circumstances of the offense that would mitigate against the imposition of the death penalty.**

~~It is the defendant's burden to prove that mitigating circumstances exist. As explained before these proceedings, the defendant need only establish a mitigating circumstance by the greater weight of the evidence, which means evidence that more likely than not tends to establish the existence of a mitigating circumstance. If you determine by the greater weight of the evidence that a mitigating circumstance exists, you must consider it established and give that evidence such weight as you determine it should receive in reaching your verdict about the appropriate sentence to be imposed. Any juror persuaded as to the existence of a mitigating circumstance must consider it in this case. Further, any juror may consider a mitigating circumstance found by another juror, even if he or she did not find that factor to be mitigating.~~

**Your decision regarding the appropriate sentence should be based upon proven aggravating factors and established mitigating circumstances that have been presented to you during these proceedings.** ~~You will now engage in a weighing process.~~

*~~Merging aggravating factors. Give the following paragraph if applicable.~~ ~~For example, the aggravating circumstances that 1) the murder was committed~~ ~~during the course of a robbery and 2) the murder was committed for financial~~*

*gain, relate to the same aspect of the offense and may be considered as only a single aggravating circumstance. Castro v. State, 597 So. 2d 259 (Fla. 1992).*

Pursuant to Florida law, the aggravating factors of *(insert aggravating factor)* and *(insert aggravating factor)* are considered to merge because they are considered to be a single aspect of the offense. If you unanimously determine that the aggravating factors of *(insert aggravating factor)* and *(insert aggravating factor)* have both been proven beyond a reasonable doubt, your findings should indicate that both aggravating factors exist, but you must consider them as only one aggravating factor during the weighing process that I am about to explain to you.

You must weigh all of the following:
a.  Whether the aggravating factor[s] found to exist [is] [are] sufficient to justify the death penalty,
b. Whether the aggravating factor[s] outweigh[s] any mitigating circumstance[s] found to exist, and
c.  Based on all of the considerations pursuant to these instructions, whether the defendant should be sentenced to life imprisonment without the possibility of parole or death.

The next step in the process is for each of you to determine whether the aggravating factor[s] that you have unanimously found to exist outweigh[s] the mitigating circumstance[s] that you have individually found to exist. The process of weighing aggravating factors and mitigating circumstances is not a mechanical or mathematical process. In other words, you should not merely total the number of aggravating factors and compare that number to the total number of mitigating circumstances. The law contemplates that different factors or circumstances may be given different weight or values by different jurors. Therefore, in your decision-making process, each individual juror must decide what weight is to be given to a particular factor or circumstance. Regardless of the results of each juror's individual weighing process—even if you find that the sufficient aggravators outweigh the mitigators—the law neither compels nor requires you to determine that the defendant should be sentenced to death.

Once each juror has weighed the proven factors, he or she must determine the appropriate punishment for the defendant. The jury's decision regarding the appropriate sentence must be unanimous if death is to be imposed. To repeat what I have said, if your verdict is that the defendant should be sentenced to death, your finding that each aggravating factor exists

must be unanimous, your finding that the aggravating factors are sufficient to impose death must be unanimous, ~~and~~ your finding that the aggravating factor[~~(s)~~] found to exist outweigh the established mitigating circumstances must be unanimous, and your decision ~~if~~ to impose a sentence of death must be unanimous.

You will be provided a form to reflect your findings and decision regarding the appropriate sentence. If your vote on the appropriate sentence is less than unanimous, the defendant will be sentenced to life in prison without the possibility of parole.

The fact that the jury can make its decision on a single ballot should not influence you to act hastily or without due regard to the gravity of these proceedings. Before you vote, you should carefully consider and weigh the evidence, realizing that a human life is at stake, and bring your best judgment to bear in reaching your verdict.

*Weighing the evidence.*
When considering aggravating factors and mitigating circumstances, it is up to you to decide which evidence is reliable. You should use your common sense in deciding which is the best evidence and which evidence should not be relied upon in making your decision as to what sentence should be imposed. You may find some of the evidence not reliable, or less reliable than other evidence.

You should consider how the witnesses acted, as well as what they said. Some things you should consider are:

1. Did the witness seem to have an opportunity to see and know the things about which the witness testified?

2. Did the witness seem to have an accurate memory?

3. Was the witness honest and straightforward in answering the attorneys' questions?

4. Did the witness have some interest in how the case should be decided?

5. **Did the witness's testimony agree with the other testimony and other evidence in the case?**

*Give as applicable.*
6. **Had the witness been offered or received any money, preferred treatment or other benefit in order to get the witness to testify?**

7. **Had any pressure or threat been used against the witness that affected the truth of the witness's testimony?**

8. **Did the witness at some other time make a statement that is inconsistent with the testimony he or she gave in court?**

9. **Has the witness been convicted of a felony or of a misdemeanor involving [dishonesty] [false statement]?**

10. **Does the witness have a general reputation for [dishonesty] [truthfulness]?**

*Law enforcement witness.*
**The fact that a witness is employed in law enforcement does not mean that [his] [her] testimony deserves more or less consideration than that of any other witness.**

*Expert witnesses.*
**Expert witnesses are like other witnesses with one exception—the law permits an expert witness to give an opinion. However, an expert's opinion is only reliable when given on a subject about which you believe that person to be an expert. Like other witnesses, you may believe or disbelieve all or any part of an expert's testimony.**

*Accomplices and Informants.*

**You must consider the testimony of some witnesses with more caution than others. For example, a witness who [claims to have helped the defendant commit a crime] [has been promised immunity from prosecution] [hopes to gain more favorable treatment in his or her own case] may have a reason to make a false statement in order to strike a good bargain with the State. This is particularly true when there is no other evidence tending to agree with what the witness says about the defendant. So, while a witness of that kind may be entirely truthful when testifying, you should consider [his] [her] testimony with more caution than the testimony of other witnesses.**

*Child witness.*

**You have heard the testimony of a child. No witness is disqualified just because of age. There is no precise age that determines whether a witness may testify. The critical consideration is not the witness's age, but whether the witness understands the difference between what is true and what is not true, and understands the duty to tell the truth.**

*Give only if the defendant testified.*

**The defendant in this case has become a witness. You should apply the same rules to consideration of [his] [her] testimony that you apply to the testimony of the other witnesses.**

*Witness talked to lawyer.*

**It is entirely proper for a lawyer to talk to a witness about what testimony the witness would give if called to the courtroom. The witness should not be discredited by talking to a lawyer about [his] [her] testimony.**

*Give in all cases.*

**You may rely upon your own conclusion about the credibility of any witness. A juror may believe or disbelieve all or any part of the evidence or the testimony of any witness.**

*Give only if the defendant did not testify.*

**The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not be influenced in any way by [his] [her] decision. No juror should ever be concerned that the defendant did or did not take the witness stand to give testimony in the case.**

*Rules for deliberation.*

These are some general rules that apply to your discussions. You must follow these rules in order to make a lawful decision.

1.      You must follow the law as it is set out in these instructions. If you fail to follow the law, your decisions will be a miscarriage of justice. There is no reason for failing to follow the law in this case. All of us are depending upon you to make wise and legal decisions in this matter.

2.      Your decisions must be based only upon the evidence that you have heard from the testimony of the witnesses, [have seen in the form of the exhibits in evidence,] and these instructions.

3.      Your decisions must not be based upon the fact that you feel sorry for anyone or are angry at anyone.

4.      Remember, the lawyers are not on trial. Your feelings about them should not influence your decisions.

*Give #5 if applicable.*
5.      The jury is not to discuss any question[s] that [a juror] [jurors] wrote that [was] [were] not asked by the Court, and must not hold that against either party.

6.      Your decisions should not be influenced by feelings of prejudice or racial or ethnic bias, ~~or sympathy~~. Your decisions must be based on the evidence and the law contained in these instructions.

~~*Victim-impact evidence.*~~

~~You have heard evidence about the impact of this murder on the [family] [friends] [community] of (decedent). This evidence was presented to show the victim's uniqueness as an individual and the resultant loss by (decedent's) death. However, you may not consider this evidence as an aggravating factor. Your decisions must be based on the aggravating factor[s], the mitigating circumstance[s], and the weighing process upon which you have been instructed.~~

*Submitting case to jurors.*

In just a few moments you will be taken to the jury room by the [court deputy] [bailiff]. When you have reached decisions in conformity with these

instructions, the appropriate form[s] should be signed and dated by your foreperson.

During deliberations, jurors must communicate about the case only with one another and only when all jurors are present in the jury room. You are not to communicate with any person outside the jury about this case, and you must not talk about this case in person or through the telephone, writing, or electronic communication, such as a blog, Twitter, e-mail, text message, or any other means.

*Give if judge has allowed jurors to keep their electronic devices during the penalty phase.*

Many of you may have cell phones, tablets, laptops, or other electronic devices here in the courtroom. The rules do not allow you to bring your phones or any of those types of electronic devices into the jury room. Kindly leave those devices on your seats where they will be guarded by the [court deputy] [bailiff] while you deliberate.

Do not contact anyone to assist you during deliberations. These communications rules apply until I discharge you at the end of the case. If you become aware of any violation of these instructions or any other instruction I have given in this case, you must tell me by giving a note to the [court deputy] [bailiff].

*Give if applicable.*

During this trial, [an item] [items] [was] [were] received into evidence as [an] exhibit[s]. You may examine whatever exhibit[s] you think will help you in your deliberations.

*Give a or b as appropriate.*

a.	The[se] exhibit[s] will be sent into the jury room with you when you begin to deliberate.

b.	If you wish to see an[y] exhibit[s], please request that in writing.

I cannot participate in your deliberations in any way. Please disregard anything I may have said or done that made you think I preferred one decision over another. If you need to communicate with me, send a note through the [court deputy] [bailiff], signed by the foreperson. If you have

**questions, I will talk with the attorneys before I answer, so it may take some time. You may continue your deliberations while you wait for my answer. I will answer any questions, if I can, in writing or orally here in open court.**

**In closing, let me remind you that it is important that you follow the law spelled out in these instructions. There are no other laws that apply to this case. Even if you do not like the laws that must be applied, you must use them. For more than two centuries we have lived by the constitution and the law. No juror has the right to violate rules we all share.**

## Comment

This instruction was adopted in 2017 [214 So. 3d 1236] and amended in 2018.

## 7.12 DIALOGUE FOR POLLING THE JURY (DEATH PENALTY CASE)

**Members of the jury, we are going to ask each of you individually about the verdict[s] that you have just heard. The question[s] pertain to whether the verdict[s], as read by the clerk, [was] [were] correctly stated.**

*The following question is to be asked of each juror if the verdict is for the death penalty:*
**Do you, [(*name of juror*)] [juror number** (*number of juror*)**], agree that each of the findings in the verdict form is yours?**

*The following question is to be asked of each juror if the verdict is for a life sentence:*
**Do you, [(*name of juror*)] [juror number** (*number of juror*)**], agree that at least one member of the jury voted for a sentence of life imprisonment without the possibility of parole?**

## Comment

This instruction was adopted in 1981 and was amended in 1997, and 2017 [214 So. 3d 1236], and 2018.